IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DONALD RAY SANDERSON, ) | |
| #263986 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-cv-878-SRW |
| ) | [WO] |
| SHERIFF D. T. MARSHALL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Donald Ray Sanderson ["Sanderson"] is a former inmate of the Montgomery County Detention Facility in Montgomery, Alabama, who is now housed at the Limestone Correctional Facility in Harvest, Alabama. In this 42 U.S.C. § 1983 action, Sanderson challenges the medical treatment he received and the conditions of confinement to which he was subjected during his confinement at the Montgomery County Detention Facility from approximately December 29, 2009 until January 26, 2010. *Amended Complaint - Doc. No. 8.* The remaining defendant is Sheriff D. T. Marshall ["Marshall"].[1] Sanderson seeks declaratory relief and money damages. *Amended Complaint - Doc. No. 8 at 4.* Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States

---

[1] This Memorandum is limited to the defendant and issues presented by Sanderson in the Amended Complaint, as previously ordered by the Court. *Order of June 7, 2011 – Doc. No. 22 at 1-2.*

Magistrate Judge's conducting all proceedings in this case and ordering the entry of final judgment.

The defendant filed a special report, supplemental special report, and supporting evidentiary materials addressing Sanderson's claims for relief. *Doc. No. 18, Doc. No. 26.* In these documents, the defendant denies Sanderson's allegations that he violated Sanderson's constitutional rights. Additionally, the defendant asserts that the complaint is due to be dismissed because Sanderson failed to exhaust an administrative remedy available to him at the Montgomery County Detention Facility with respect to the claims presented in this cause of action. The defendant bases his exhaustion defense on the plaintiff's failure to lodge a grievance with the jail before filing the claim presently pending before this court. Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendant's reports as a motion for summary judgment. *Order of June 7, 2011 - Doc. No. 23.* Thus, this case is now pending on the defendant's motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendant's motion for summary judgment with respect to the exhaustion defense is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendant's properly supported motion for summary judgment, Sanderson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is

appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary

materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Sanderson fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

On December 29, 2009, Sanderson was transferred from the Limestone Correctional Facility to the Montgomery County Detention Facility so that he could attend a court proceeding. He was transferred back to Limestone Correctional Facility on January 26, 2010. *Robinson Aff.* at 1, *Def.'s Special Report - Doc. No. 18-4* at 1. The evidentiary materials submitted by the defendant establish that Sanderson did not file a request to see a doctor and he did not file a grievance with jail personnel challenging his medical treatment or conditions of confinement before filing his original complaint in this suit in October 2010. *Id.* at 2.

The defendant therefore maintains that this case is subject to dismissal because Sanderson failed to exhaust the administrative remedy provided at the Montgomery County Detention Facility prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

## A. Exhaustion

The Prison Litigation Reform Act ["PLRA"] compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a section 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *see also Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("the PLRA exhaustion

requirement is not jurisdictional, and thus allowing a district court to dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies"). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Ngo*, 548 U.S. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90-91, 93. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). "The only facts pertinent to determining whether a

9

prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed. Appx. 81, 83 (11th Cir. 2012) (per curiam) (unpublished) (inmate's "attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect").

The record in this case establishes that the Montgomery County Detention Facility provides a grievance procedure for inmate complaints. *Def.'s Special Report - Doc. No. 18-3* at 14. The relevant portion of the grievance procedure reads as follows:

> You are entitled to voice any grievance to the Jail Administration. You are encouraged to put the grievance in writing on the *Inmate Grievance Form* and place it in the mailbox located in the dayroom of your cellblock. The Administration will give prompt and fair consideration to any grievance and will take appropriate action when warranted.

*Id.* Sanderson does not dispute the existence of the grievance procedure, but he claims that he did not receive a copy of the handbook containing the rule. *Id. Doc No. 18-4* at 24.

The court entered orders allowing Sanderson the opportunity to respond to the defendant's special reports. *Order of June 7, 2011 - Doc. No. 23; Order of June 5, 2013 - Doc. No. 27*. In his July 5, 2011, affidavit, Sanderson states that when he arrived at the Montgomery County Detention Facility, officials confiscated the back brace and medication prescribed for him at the Limestone Correctional Facility. Sanderson maintains that his prescription medicine was withheld by jail personnel under the supervision of Marshall. *Pl.'s*

*Resp. - Doc. No. 24* at 4.  He states that jail officials told him he had to "toughen up," and a doctor said, "Oh well, this is jail, right now no meds," even when Sanderson was in great pain that could have been alleviated by his medicine.  *Id.*  Sanderson states that he tried to exhaust his remedies, but "Marshal [sic], Medical Health care providers for Montgomery County Jail would not provide any grievance forms to plaintiff."  *Id.* at 7.

In his July 8, 2013, response, Sanderson refers to exhibits and affidavits attached to the response, but the filing included no such attachments, and the document itself is not notarized or sworn to under penalty of perjury.  *Pl.'s Resp. - Doc. No. 30* at 4.  In the July 8, 2013, response, Sanderson describes in detail the number of times over the course of his nearly month-long stay that he asked for medical help.  *Id.* at 4-6. He alleges that the defendant is withholding evidence.  *Id.* at 5.  Sanderson states that an officer said that Sanderson would get his back brace and his pills when he left the jail after his court hearing.  *Id.* at 5.  Sanderson maintains that he was never called to go to court, and he lay on the floor in pain, hardly able to walk because officers did not return his back brace to him.  *Id.*  He asserts that during the first week of his stay at the Montgomery County Detention Facility, he sent four written requests for his pain medication.  *Id.*  He states that he sent a total of eight requests for help during the time he was at the facility and gave them to nurses and officers, but they "apparently never made it to [the] person in charge of the jail . . . or they were just thrown away when they arrived at her office."  *Id.* at 6.  He states that there are

11

pages missing from the defendant's submitted documents, including Sanderson's statement to officers that he "was dying without" his back brace and medication. *Id.* at 7. Sanderson states that he could not climb to the top bunk and was forced to sleep on the floor, among rodents and spiders, because he could not climb to the top bunk. *Id.* at 10, 14.

Sanderson has not submitted evidence beyond his own, self-serving statements to prove that he tried to submit a grievance or medical request to jail personnel regarding his back brace, medication, pain, inability to climb to the top bunk, and filthy living conditions. A self-serving statement may, if adequately detailed and objective, be sufficient to create a fact question that precludes summary judgment. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). In *Feliciano*, the Court of Appeals held that the plaintiff generated a fact question for trial with sworn statements that were self-serving, but not conclusory, as they were "descriptions of specific, discrete facts of the who, what, when, and where variety. They describe the external world as [plaintiff] observed it at the time and are based on her first-hand personal knowledge, not her subjective beliefs. And they directly contradict the officers' assertions about what they observed before and after they entered the apartment." *Id.*

Here, Sanderson's most detailed statements, filed July 8, 2013, were not made under penalty of perjury. Thus, they may not be considered in opposition to defendant's summary judgment motion. *See Holifield*, 115 F.3d at 1564. The remaining admissible evidence

before the court is both self-serving and conclusory, and it does not create a genuine issue of material fact as to whether Sanderson attempted to, but was prevented from, filing a grievance regarding his medical care before he filed suit in this case. Based on the record before the court, it is undisputed that Sanderson failed to exhaust an administrative remedy available to him, which is a precondition to proceeding in this court on his claims. Specifically, Sanderson did not file a grievance with respect to the claims presented in this cause of action, as allowed by the grievance procedure in effect at the Montgomery County Detention Facility, before filing this case. The court therefore concludes that the claims presented in this cause of action are subject to dismissal. *Ngo*, 548 U.S. at 87-94.

Sanderson is no longer at the Montgomery County Detention Facility; thus, the administrative remedy provided by the defendant for the instant claims is no longer available to Sanderson. Under these circumstances, dismissal with prejudice is appropriate. *Bryant v. Rich*, 530 F.3d 1368, 1375 & n.11 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."); *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining

access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

### B. No Personal Involvement by Defendant Marshall

Even if the court considered all the statements in Sanderson's response to the summary judgment motion, his claims against defendant Marshall would not entitle him to relief. An official may be held liable under the United States Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Based on the record before the court, however, Marshall had no personal involvement with Sanderson, and

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County,*

*Ala.*, 198 Fed. Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen,* 525 F. Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent that Sanderson seeks relief from defendant Marshall for the treatment provided by jail medical personnel or actions taken by jail personnel due to the defendant's position as sheriff, assuming *arguendo* that Marshall exerted some authority over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]. . . . *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Marsh v.*

*Butler County, Ala.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (§ 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Thus, liability for medical treatment provided to Sanderson could attach to defendant Marshall only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Sanderson, however, has offered no evidence which would create a genuine issue of disputed fact with respect to the claims presented against defendant Marshall.  The record is devoid of evidence indicating that Marshall personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Sanderson during his confinement at the Montgomery County Detention Facility; rather, it is undisputed that Marshall did not participate in the provision of treatment to Sanderson.  The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Sanderson, that they provided treatment to Sanderson in

accordance with their professional judgment upon assessment of his condition, and that jail officers assisted in carrying out the medical treatment. Marshall did not participate in the treatment of Sanderson, nor did he ever receive notice of any concern regarding Sanderson's treatment.

In light of the foregoing, defendant Marshall can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Sanderson's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Marshall, Sanderson must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Marshall] directed the [facility's health care or jail staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (alterations added, internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Sanderson has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Marshall directed medical or jail personnel to act unlawfully or knew that they would

17

act/acted unlawfully and failed to stop such action. In addition, Sanderson has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Marshall failed to take corrective action. Finally, the undisputed evidentiary materials submitted by defendant Marshall demonstrate that the challenged actions did not occur pursuant to a policy enacted by Marshall. Thus, the requisite causal connection does not exist in this case, and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendant Marshall.

### IV. CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1. The defendant's motion for summary judgment be GRANTED.

2. This case be DISMISSED with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

A separate Final Judgment will accompany this memorandum opinion.

DONE, this 4th day of September, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE